# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-DR-00343-SCT

*STEPHEN VIRGIL McGILBERRY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/12/1996 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT M. RYAN |
| | DAVID P. VOISIN |
| | STACY PREWITT |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| | CHARLENE R. PIERCE |
| | JEFFREY A. KLINGFUSS |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | POST CONVICTION RELIEF DENIED - 03/06/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     Stephen Virgil McGilberry was tried and convicted of four counts of capital murder committed when he was sixteen years old. The Circuit Court of Jackson County thereafter sentenced him to death. We affirmed the conviction and sentence in ***McGilberry v. State***, 741 So. 2d 894 (Miss. 1999), *cert. denied*, 529 U.S. 1006, 120 S. Ct. 1273, 146 L. Ed. 2d 222 (2000). After filing a pro se petition for

post-conviction relief, McGilberry, now represented by the Office of Capital Post-Conviction Counsel, has also filed an application for leave to seek post-conviction relief in the circuit court in which he raises multiple issues. Finding no merit in these issues, we deny McGilberry's petitions.

## FACTS

¶2. Sixteen-year old Stephen Virgil McGilberry was charged with the deaths of 44-year-old Patricia Purifoy, his mother; 44-year-old Kenneth Purifoy, his step-father; 24-year-old Kimberly Self, his half-sister, and 3-year-old Kristopher Self, his nephew and Kimberly's son. Police were called to Kenneth and Patricia's home on October 23, 1994, where they found the four bludgeoned bodies. An investigation revealed that McGilberry and 14- year-old Chris Johnson had taken Kimberly's car and driven to a friend's house in another town. The next morning, their friend's mother, Brenda Smith Saucier, drove the pair back to the Purifoy home, where police were waiting.

¶3. After McGilberry was read his *Miranda* rights, he signed a waiver. He then confessed to the killings and told authorities that he and Johnson had committed the murders with baseball bats. McGilberry indicated that he was disgruntled because his driving privileges had been taken away and that he had bludgeoned Kenneth and Kimberly while John had hit Patricia and Kristopher. McGilberry also admitted striking his mother with the baseball bat because he felt that she was suffering. McGilberry told police that he had taken cash and credit cards from his mother and then driven away in Kimberly's car. Blood stains on McGilberry's clothing matched the blood types of the victims.

# DISCUSSION

### I. WHETHER PROBABLE CAUSE EXISTED FOR McGILBERRY'S ARREST.

¶4. McGilberry contends that police had no probable cause to arrest him at the time he arrived at the crime scene. He also claims ineffective assistance of counsel because counsel failed to challenge the probable cause for his arrest. On direct appeal, we acknowledged that the issue had not been properly raised, yet we considered the merits of the claim:

> Regardless, McGilberry's contention that he was illegally arrested is without merit. At the time McGilberry gave his confession, he was not under arrest. He was only a suspect brought in for questioning. Furthermore, McGilberry was sought for questioning because police had learned that he was the only surviving family member, he was missing and Petranglo had told police to look for McGilberry because Kimberly's GEO Storm was not at the Dewberry residence and McGilberry's Bronco was there. This issue is without merit.

*McGilberry*, 741 So. 2d at 904. McGilberry argues that the holding is inconsistent with our decision in *Campbell v. State*, 798 So. 2d 524 (Miss. 2001). In that case however, the State conceded that there was no probable to cause to arrest when the suspects were first taken in for questioning based solely upon the discovery of the victim's body on the defendant's property. We reversed Campbell's murder conviction because police seized his clothing without a warrant in order to test for blood stains. In the present case, probable cause existed based on the facts that McGilberry was the only surviving member of the family, that Kimberly's car was missing, and that McGilberry's car was not missing. The issue was correctly decided on direct appeal and is therefore procedurally barred under the doctrine of res judicata. Miss. Code Ann. § 99-39-21(3) (Supp. 2002).

### II. WHETHER A JUROR'S STATEMENTS AT A SUBSEQUENT UNRELATED TRIAL CONSTITUTED JUROR MISCONDUCT IN McGILBERRY'S TRIAL.

3

¶5.     McGilberry contends that juror Greg Harper did not consider mitigating evidence during McGilberry's trial because, during voir dire in a subsequent unrelated trial, Harper stated that he did not "give a lot of weight to mitigation." McGilberry concludes that Harper must therefore have withheld information when examined at McGilberry's trial concerning Harper's willingness or unwillingness to consider mitigating evidence. When a venireperson in criminal proceedings fails to respond to a question presented by defense counsel on voir dire, and the venireperson actually has the knowledge to respond affirmatively or negatively, upon a motion for a new trial, the circuit court should determine whether the question was relevant to the voir dire examination, whether the question was unambiguous, and whether the juror had substantial knowledge of the information sought to be elicited. *Odom v. State*, 355 So. 2d 1381, 1383 (Miss. 1978).

¶6.     In the present case, McGilberry makes no showing that Harper was disinclined to consider mitigating evidence at the 1995 trial. He only shows that Harper expressed such a sentiment at a later proceeding. To infer prejudice would be speculative at best, and we do not engage in speculation in such circumstances. *Buckley v. State*, 772 So. 2d 1059, 1065 (Miss. 2000). Therefore, Harper did not have substantial knowledge of the information sought to be elicited, and he did not withhold such information. This issue is without merit.

### III. WHETHER BEING SEEN IN SHACKLES DENIED McGILBERRY A FAIR TRIAL.

¶7. McGilberry contends that he was denied a fair trial because he was allegedly seen in shackles by the jurors. First, this claim was not raised at trial or on direct appeal and is now procedurally barred from collateral review pursuant to Miss. Code Ann. § 99-39-21(1). Second, there is no substantial showing that McGilberry was actually seen in shackles by the jury. McGilberry instead offers the unsworn statement of an alternate juror who was released from service prior to deliberation. An alternate that does not sit on the panel has no affect on the outcome of the case. *Mack v. State*, 650 So. 2d 1289, 1300 (Miss. 1994). "Generally, we have not found the right to a fair trial to have been abridged where the defendant has been seen in the courtroom by the jury in shackles or handcuffs." *Brown v. State*, 690 So. 2d 276, 287 (Miss. 1996) (citing *Lockett v. State*, 517 So. 2d 1317, 1329 (Miss. 1987)). This issue is without merit.

### IV. WHETHER THE ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL AGGRAVATOR WAS APPROPRIATE.

¶8. At trial, the State was granted a jury instruction which required the jury to consider whether the crimes were especially heinous, atrocious or cruel. McGilberry argues that the murders were not heinous, atrocious or cruel because the victims were either rendered unconscious by the blows or were killed nearly instantly. McGilberry claims that defense counsel should have objected at trial and should have raised the matter on direct appeal.

¶9. The aggravating instruction reads as follows:

> The Court instructs the jury that in considering whether the capital offense was especially heinous, atrocious or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously

wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others.

An especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of capital murders-the conscienceless or pitiless crime which is unnecessarily torturous to the victim. If you find from the evidence beyond a reasonable doubt that the defendant utilized a method of killing which caused serious mutilation, that there was dismemberment of the body prior to death, that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim, then you may find this aggravating circumstance.

¶10. The "especially heinous, atrocious or cruel" aggravating circumstance, *without a limiting instruction*, is unconstitutionally vague and, consequently, an invalid aggravating circumstance. ***Clemons v. State***, 593 So. 2d 1004, 1005 (Miss. 1992). However, the instruction is permissible where additional limiting language sufficiently refines and narrows the aggravating circumstance of "heinous, atrocious or cruel" and thereby channels the jury's sentencing discretion in a principled way. ***Brown v. State***, 798 So. 2d 481, 501 (Miss. 2001). We have found the instruction given in the present case to be legally sufficient. ***Knox v. State***, 805 So. 2d 527, 533 (Miss. 2002).

¶11. McGilberry concedes the validity of the instruction's language but argues that the instruction was not supported by the evidence. This issue was capable of determination on direct appeal and is now procedurally barred from further review. Miss. Code Ann. § 99-39-21(1). Further, we have already determined on direct appeal that the evidence was more than sufficient to support the jury's finding of aggravating circumstances:

McGilberry stands convicted of brutally murdering his mother, his stepfather, his sister and his three year-old step nephew. The method used, bludgeoning with a baseball bat, was both gruesome and grisly. The evidence showed that the crimes were premeditated and contemplated over a period of at least two weeks. McGilberry bludgeoned his family

6

> so that he could steal a car, some cash, a money order, and a credit card and then run away from home. The jury decided his fate, and we find no reason to disturb the verdict or sentence.

*McGilberry*, 741 So. 2d at 925. Defense counsel therefore had no legitimate basis for posing an objection to the instruction at trial, and any renewed claim on direct appeal would have been fruitless. This issue is without merit.

## V. WHETHER THE GREAT RISK OF DEATH AGGRAVATOR WAS APPROPRIATE.

¶12. McGilberry argues that the jury instruction concerning the aggravating circumstance as to whether the defendant created a great risk of death to many persons was deficient in that it failed to require the jury to find that he "knowingly" created such a risk to persons other than his intended victims. This issue was capable of determination at trial and on direct appeal and is now procedurally barred from collateral review. Miss. Code Ann. § 99-39-21(1).

¶13. The capital murder aggravating circumstance, that a defendant knowingly created a "great risk of death to many persons," has been applied to a defendant who stabbed to death only members of his family. *Jackson v. State*, 684 So. 2d 1213 (Miss. 1996). "To restrict its use to those crimes where very large numbers of individuals were at risk or those where the safety of others than an intended few was jeopardized would limit the statute beyond its intended scope." *Id*. at 1235. The State concedes that the instruction did not recite that McGilberry "knowingly" created the risk but points out that there was sufficient evidence for the jury to find that McGilberry, by his conduct, knowingly put his family in jeopardy. The instruction as given was substantially correct and there was evidence at trial that McGilberry planned the murders well in advance.

7

¶14.    If one aggravator is found to be invalid, we are authorized to reweigh the remaining aggravators against the mitigating circumstances and affirm, hold the error to be harmless, or remand for a new sentencing hearing. Miss Code Ann. § 99-19-105(5)(b) (Rev. 2000). Therefore, even if this aggravating circumstance is assumed to be invalid, the remaining aggravating circumstances more than support the imposition of the death penalty. As previously noted, McGilberry "bludgeoned his family so that he could steal a car, some cash, a money order, and a credit card and then run away from home." *McGilberry*, 741 So. 2d at 925. The crime was premeditated and was committed in brutal fashion. The death sentence is warranted even absent a finding of the "great risk of death" circumstance. This issue is without merit.

## VI.    WHETHER THE STATE PROVED THE UNDERLYING FELONY OF ROBBERY.

¶15.    McGilberry contends that defense counsel failed to challenge at trial and on direct appeal the State's assertion that the murders were committed during the course of a robbery. However, we found on direct appeal that counsel raised the issue at trial by way of a motion for directed verdict and then raised the issue on direct appeal by claiming error in the denial of a motion to dismiss the capital portion of the indictment. We said, "Taking all the evidence in the light most favorable to the State, it is apparent that the State presented more than sufficient evidence to support the jury's finding that the robbery was committed in the course of the murders." *McGilberry*, 741 So. 2d at 912. The issue is therefore procedurally barred from further review by the doctrine of res judicata. Miss. Code Ann. § 99-39-21(3).

## VII.    WHETHER THE STATE MADE IMPROPER CLOSING REMARKS.

¶16.    McGilberry asserts that trial counsel failed to object to the State's closing argument that the jury should "think of a more appropriate time in your memory for retribution." The State responds that the issue is procedurally barred from consideration pursuant to Miss. Code Ann. § 99-39-21(1) because the issue

8

was capable of determination at trial and on direct appeal. However, we have the prerogative of relaxing the rules of contemporaneous objection and plain error where the interests of justice so require. *Williams v. State,* 445 So. 2d 798, 810 (Miss. 1984). In *Pinkney v. State,* 538 So. 2d 329, 338 (Miss. 1988), *vacated and remanded on other grounds*, 494 U.S. 1075, 110 S. Ct. 1800, 108 L.Ed. 2d 931 (1990), we found no reversible error where the State asked the jury to give justice to the deceased victim. The State's closing remarks in the present case are no more egregious. This issue is without merit.

### VIII. WHETHER COUNSEL RENDERED INEFFECTIVE ASSISTANCE DURING THE SENTENCING PHASE.

¶17.    McGilberry contends that his defense counsels' performance was deficient at the sentencing phase of his trial.

> The standard for determining if a defendant received effective assistance of counsel is well settled. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case. 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984) (citing *Strickland v. Washington*, 466 U.S. at 687). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id*.

*Burns v. State*, 813 So. 2d 668, 673 (Miss. 2001). We have further held that the "failure to present a case in mitigation during the sentencing phase of a capital trial is not, per se, ineffective assistance of counsel." *Williams v. State*, 722 So. 2d 447, 450 (Miss. 1998) (citing *Williams v. Cain*, 125 F.3d 269, 277 (5th Cir.1997)).

¶18. In the present case, McGilberry does not claim that no case in mitigation was presented but only that it was poorly prepared and executed. McGilberry argues first that defense counsel inadequately investigated his background in search of mitigation evidence.

¶19. Specifically, McGilberry charges that defense counsel were inexperienced, failed to pursue the appointment of an investigator, and failed to renew a request for a mental health expert. The State correctly counters that these are blanket assertions unsupported by the record. David Ishee and Anthony Lawrence both lacked experience in capital representation but filed approximately 40 pretrial motions between December 1994 and February 1996.

¶20. McGilberry also claims that his defense was hampered by the failure to secure an investigator. The evidence was that McGilberry brutally and viciously beat his entire family to death with a baseball bat and that he had planned their murders. There is no showing that additional investigation into McGilberry's background would have prevented imposition of the death penalty, only that more details of McGilberry's less than idyllic childhood would have been exposed.

¶21. With regard to the claim that counsel failed to pursue an ex parte motion for a mental health expert, we explicitly held on direct appeal that there was no error in disallowing counsel to proceed ex parte. *McGilberry*, 741 So.2d at 916-17. This issue, although couched as an ineffective assistance claim, is barred as res judicata. Miss. Code Ann. § 99-39-21(3).

¶22. Dr. Roy Deal, a psychiatrist employed by the State of Tennessee prison system, served as the mental health expert for the defense. McGilberry now argues that his defense suffered because Dr. Deal's credentials were insufficient inasmuch as he was not board-certified in psychiatry. McGilberry offers no authority to support such a proposition. Dr. Deal was qualified as an expert at trial and testified during the guilt phase that McGilberry was mentally ill and possessed a history of childhood trauma. Dr. Deal testified

10

that McGilberry was a sociopath with a history of inappropriate conduct as a juvenile. His IQ was 86. Dr. Deal opined that McGilberry was mentally ill on the day of the murders and unable to appreciate right from wrong. The record does not support a finding that Dr. Deal's testimony was ineffective, and it certainly cannot be concluded that defense counsel was ineffective for relying on Dr. Deal at trial. This issue is without merit.

¶23. McGilberry argues that counsel was ineffective because the prosecution was able to exploit Dr. Deal's lack of experience during its closing argument. This argument is unsupported by any legal authority and is not supported by the record. As previously discussed, Dr. Deal was qualified as an expert and opined that McGilberry was mentally ill at the time of the murders. This issue is without merit.

¶24. Defense counsel only presented one witness during the sentencing phase of the trial. Brenda Saucier, a friend and former neighbor of the Purifoys, testified that she knew McGilberry to be a troubled and immature child who did not realize the magnitude of his actions. Given the brutal and premeditated nature of the crimes, defense counsel did well to get just one person to plead with the jury to spare McGilberry's life. This issue is without merit.

### IX. WHETHER COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE ADMISSION OF EVIDENCE OF PRIOR BAD ACTS.

¶25. McGilberry argues that trial counsel was ineffective for not objecting when his own expert testified that he (McGilberry) had once been accused of sexually molesting a small child. The information was disclosed during the guilt phase when defense counsel asked Dr. Deal what medical records he reviewed. Dr. Deal responded that his review included the records of the Keesler Air Force Base Family Advocacy Program which had conducted an investigation. Trial counsel was attempting to establish a defense of insanity at the time of the question.

¶26.    The record indicates that trial counsel intentionally elicited this testimony as part of a showing that McGilberry's psychological instability was evident at an earlier age.  Counsel's choice of whether to ask certain questions or make certain objections falls within the realm of trial strategy and does not amount to ineffective assistance of counsel.  *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995).  Such choices are presumed strategic "unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'"  *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).  This issue is without merit.

## X.    WHETHER  THE  DEATH  SENTENCE VIOLATES THE MISSISSIPPI CONSTITUTION.

¶27.    McGilberry argues that his death sentence violates the Mississippi Constitution's prohibition against cruel and unusual punishment because he was only sixteen years old at the time of the offense.  McGilberry also argues that he death sentence as applied to him is disproportionate pursuant to Miss. Code Ann. § 99-19-105.  This issue was considered and rejected on direct appeal. *McGilberry*, 741 So. 2d at 924-25. The matter is therefore procedurally barred from consideration of collateral review under the doctrine of res judicata. Miss. Code Ann. § 99-39-21(3).  Without waiving the procedural bar, we have previously recognized that imposition of the death penalty on a sixteen or seventeen year old presents no per se case of cruel and unusual punishment, and that age is only a factor to be considered in mitigation.  *Foster v. State*, 639 So. 2d 1263, 1296 (Miss. 1994).  This issue is without merit.

## XI.    WHETHER  THE  DEATH  SENTENCE VIOLATES THE UNITED STATES CONSTITUTION.

¶28.    McGilberry argues that imposition of the death penalty for an offense committed when he was only 16 years of age constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.  This issue was not raised at trial or on direct appeal and is now procedurally barred

from consideration. Miss. Code Ann. § 99-39-21(1). Further, the United States Supreme Court has ruled only that no one *under* the age of sixteen may receive the death penalty without violating that person's Eighth Amendment rights. **Thompson v. Oklahoma**, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed. 2d 702 (1988). This issue is without merit.

### XII. WHETHER THE DEATH SENTENCE IS PROHIBITED BY INTERNATIONAL LAW.

¶29. McGilberry argues that his execution is prohibited by the International Covenant on Civil and Political Rights, an international treaty which has been ratified by the United States Senate. This issue was not raised at trial or on direct appeal is now procedurally bared from consideration. Miss. Code Ann. § 99-39-21(1). Without waiving the procedural bar, the issue is without merit because, during the ratification process, the United States Senate specifically reserved the right to impose capital punishment on persons below 18 years of age. International Covenant on Civ. and Pol. Rts., S. Exec. Rept., No. 102-23, 102nd Congress, 2d Sess., 1 (1992). Further, the United States Supreme Court has specifically upheld the applicability of the death penalty to persons 16 years of age. **Thompson v. Oklahoma**, 487 U.S. 815, 108 S. Ct. 2687, 101 L. Ed. 2d 702 (1988). This issue is without merit.

### XIII. WHETHER CUMULATIVE ERROR NECESSITATES A REVERSAL OF THE CONVICTION AND SENTENCE.

¶30. McGilberry argues that cumulative errors committed at trial denied him a fair trial. Because this issue was considered and rejected on direct appeal, it is now procedurally barred from further review. Miss. Code Ann. § 99-39-21(3). Also, since the individual assignments of error are without merit, there can be no cumulative error. As we stated on direct appeal,

> We have conducted a thorough review of the record, the briefs, and the argument and determined that there are no individual errors which

require reversal of either McGilberry's conviction or his sentence. McGilberry argues that the collective "bad" acts of the prosecutor dictate reversal under the cumulative error analysis. While his trial was not perfect, we do not find any errors, either individually or cumulatively, which warrant reversal. A criminal defendant is not entitled to a perfect trial, only a fair trial. *Sand v. State*, 467 So. 2d 907, 911 (Miss. 1985). The evidence of guilt in this case was overwhelming and, while not before this Court on an assignment of error, our independent review of the sentencing phase reveals no errors. McGilberry received all that he was entitled to a fair trial.

*McGilberry,* 741 So. 2d at 924. This issue is without merit.

## XIV. WHETHER COUNSEL WAS INEFFECTIVE IN FAILING TO OBTAIN A TRANSFER TO THE YOUTH COURT.

¶31. McGilberry argues that trial counsel was ineffective for failing to develop and present evidence in support of his motion to remand the matter to youth court. Miss. Code Ann. § 43-21-151 confers original jurisdiction on the youth court in all proceedings concerning a delinquent child *except* where the act committed by the child, if committed by an adult, would be punishable by life or death. In such cases, original jurisdiction lies in the circuit court. *Foster v. State*, 639 So. 2d 1263, 1297 (Miss. 1994). Juveniles do not fall within the jurisdiction of the youth court if they commit offenses punishable by death or life imprisonment. *Holly v. State*, 671 So. 2d 32, 41-42 (Miss. 1996). Consequently there could be no prejudice to McGilberry's defense for failure to more than just file a motion to transfer the case to youth court.

¶32. McGilberry's reliance on the federal case of *Foster v. Johnson*, 293 F.3d 766 (5th Cir. 2002), for the proposition that counsel was ineffective is misplaced. In that case, the defendant argued that counsel was ineffective for failure to even file a motion for transfer to youth court, whereas McGilberry's attorney actually filed such a motion. The United States Court of Appeals for the Fifth Circuit affirmed the denial of habeas corpus relief after holding that this Court's finding of no prejudice was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Foster*, 293 F.3d at 788. This issue is without merit.

## XV. WHETHER COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE YOUTH COURT ISSUE ON DIRECT APPEAL.

¶33. Because trial counsel's performance in seeking a transfer to the youth court was not deficient, appellate counsel cannot be faulted for not raising the issue on direct appeal. This issue is without merit.

## XVI. WHETHER COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO McGILBERRY'S APPEARANCE IN SHACKLES.

¶34.    As previously discussed, McGilberry has submitted only the unsworn affidavit of an alternate juror who was released from service prior to deliberation.  There can be no prejudice based on a showing that only a non-deliberating juror saw McGilberry in shackles.  It has been held that the brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial and that defendants bear the burden of affirmatively demonstrating prejudice.  ***United States v. Diecidue***, 603 F.2d 535, 549 (5th Cir. 1979).  McGilberry has shown no such merit, and appellate counsel cannot be faulted for not raising the issue on direct appeal.  This issue is without merit.

## CONCLUSION

¶35.    Finding no merit in the issues raised by McGilberry, both his pro se petition and his application for leave to seek post-conviction relief in the circuit court are denied.

¶36.    **PETITIONS FOR POST-CONVICTION COLLATERAL RELIEF, DENIED.**

**PITTMAN, C.J., SMITH, P.J., COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.  McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**