# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DR-00907-SCT

*ERIC SNOW a/k/a TONY A. HINTON a/k/a T. T.*
*a/k/a TONY ANTHONY HINTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/6/1998 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL BY: DAVID VOISON ROBERT RYAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JUDY T. MARTIN MARVIN L. WHITE, JR. |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | LEAVE TO SEEK POST-CONVICTION RELIEF GRANTED IN PART AND DENIED IN PART - 06/10/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. Eric Snow was charged with the February 21, 1997, murder of Jefferson Davis County Sheriff's deputies Tommy Bourne and J.P. Rutland. The crime occurred in Simpson County as Snow was being transported to the Mississippi Department of Corrections in Rankin County. Earlier that day, Snow had been convicted and sentenced for manslaughter

and aggravated assault in Jefferson Davis County. Snow was captured following his escape and tried for the murders in Lowndes[1] County and, in August 1998, was convicted of capital murder and escape from jail. He was sentenced to death for each count of capital murder. His conviction and sentence was affirmed by this Court on September 27, 2001. *Snow v. State*, 800 So.2d 472 (Miss. 2001). Rehearing was denied on November 29, 2001, and the mandate issued one week later. Snow petitioned the U.S. Supreme Court for a writ of certiorari and the same was denied on May 28, 2002. *Snow v. Mississippi,* 535 U.S. 1099, 122 S. Ct. 2299, 152 L. Ed. 2d 1056 (2002). On October 5, 2001, the Office of Capital Post-Conviction Counsel (OCPCC) was appointed to represent Snow in his post-conviction relief petition. Snow has now filed his Motion for Leave to Proceed in the Trial Court.

## FACTS

¶2.     The facts of this case were adequately set out in *Snow*, 800 So. 2d at 477, and will not be discussed here.

## ANALYSIS

**I.      *Atkins v. Virginia* and the Eighth Amendment**.

¶3.     Snow claims that he is entitled to post-conviction relief pursuant to *Atkins v. Virginia,* 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), where the U.S. Supreme Court held that imposition of the death penalty on mentally retarded inmates constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Here we find that *Atkins* is an intervening decision, and our recent holding

---

[1] Pursuant to a change of venue.

in ***Chase v. State***, No. 2003-DR-01135-SCT, 2004 WL 1118688 (Miss 2004), governs the determination of this case. Under the mandate of ***Chase***, where a capital defendant's trial took place prior to the ***Atkins*** decision, he must present to this Court an affidavit from an expert who opines to a reasonable degree of probability/certainty that the defendant has an IQ of 75 or below. Moreover, the expert must conclude that there is a reasonable basis to believe that the defendant will be found mentally retarded.

¶4. Snow submitted to this Court an affidavit of John R. Goff, Ph.D. Dr. Goff testified that Snow was tested four times between 1987 and his trial. He received IQ scores of 70, 67, and 73, and 65 on these tests. Dr. Goff concluded from looking at another doctor's records and from Snow's school records that he had sub-average intellectual functioning and significant deficits in adaptive functioning. Dr. Goff opined to a reasonable degree of psychological certainty that Eric Snow is mentally retarded.

¶5. In ***Chase***, we held that there are other factors that a defendant must present to the trial court in order to prove that he is mentally retarded so as to avoid the death penalty. However, we find that Snow has minimally met his burden of production on this issue so as to be entitled to an evidentiary hearing pursuant to the Court's requirements set out in ***Chase***.

## II. Resentencing.

¶6. Snow argues that if there is any doubt about his mental retardation, he is entitled to resentencing. He argues that because the U.S. Supreme Court's holding in ***Atkins*** made mental retardation a factual issue upon which a defendant's eligibility for death turns, and according to the ruling in ***Ring v. Arizona***, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556

3

(2002), all facts essential to elements of the offense and sentencing factors must be found by the jury beyond a reasonable doubt, then Snow is entitled to a new sentencing proceeding.

¶7.     We find that Snow is not entitled to a new sentencing proceeding based on the *Ring* argument*.*  At the time of his trial, the jury found Snow guilty and sentenced him to death. Unlike the *Ring* case where the jury found Ring guilty of felony murder and the trial judge found the aggravating circumstance(s) sufficient to sentence Ring to death, the jury in Snow's case found aggravating circumstances beyond a reasonable doubt.  Snow argues that the jury must find all essential facts in order to impose the death penalty and, in fact, the jury did find all essential facts existing at the time of Snow's trial and sentenced him to death. This argument is without merit.

### III.     Ineffective assistance of counsel:  mental retardation.

¶8.     Snow argues that his attorney failed to present direct evidence of his mental retardation, and that he instead presented only anecdotal or "informal" evidence that Snow was "slow."   Snow asserts that his attorney erred in calling Sharon Dungan, the Superintendent of Education, to testify about Snow's placement in an appropriate educational program, rather than calling Dr. Goff to offer a formal diagnosis.  Furthermore, it is argued that Snow's attorney erred in failing to present older special education records (1987 and 1990).  Snow argues that his attorney should have called more family members (other than his mother and his aunt) to offer testimony on his mental retardation.

¶9.     Snow's attorney called witnesses who testified that Snow was slow and information available to the attorneys demonstrated that Snow was not mentally retarded; such as testimony of the Superintendent of Jefferson Davis County Schools and Dr. Lott, the

4

evaluating psychologist. Even the doctor that Snow's attorneys consulted (Dr. Goff) was unable to make a definite conclusion. Furthermore, at the time of Snow's trial, a retarded person could be sentenced to death. The record indicates that the trial counsel did bring forward witnesses of Snow's mental capacities and that his decision not to call Dr. Goff to testify was a matter of trial strategy where he states in his affidavit that he felt that the State would have called Dr. Lott in for a damaging rebuttal. [2]

¶10. We find that Snow wholly fails to demonstrate that his trial attorneys were ineffective and fails to show any prejudice from their performance. *See **Strickland v. Washington***,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The record indicates that Snow's counsel brought forward evidence that, under the circumstances existing at the time of the trial, was sufficient to demonstrate that Snow was incompetent to stand trial and/or less culpable for the murders. Counsel's performance as to the issue of mental retardation should not now be evaluated in the light of ***Atkins*** which was decided after Snow's trial. This issue is without merit.

#### IV. Ineffective assistance of counsel: presentation of mitigation evidence.

¶11. Again Snow argues that childhood poverty, the separation of his parents, his sensitivity, and his unusual habit of hiding food should have been presented as evidence in mitigation of punishment. Snow again argues that Dr. John Goff should have been called to testify in this phase of the proceedings.

---

[2] Dr. Lott's testimony refuted Dr. Goff's in that Dr. Lott testified that Snow was not retarded and instead that he was not putting forth his best effort in the evaluations that were conducted before trial. Dr. Lott also reported that he found the accounts of Snow's hallucination to be fabricated and noted Snow's alcohol and marijuana use.

¶12. Snow's aunt testified as to the separation of his parents and of the adverse impact that it had on him. She testified that they were poor and often lacked food and that Snow wore hand-me-down clothes. Superintendent Dungan testified in detail about Snow's learning disability and his results on the achievement tests and how he was functioning at the level of a 6-9-year old. Snow's mother also related Snow's "bizarre" behavior and his childhood head injuries.

¶13. We find that Snow's trial attorneys put on all of the evidence that was relevant at the time in the mitigation of punishment phase of the proceedings. This issue is without merit.

## V. Competency to stand trial / ineffective assistance of counsel.

¶14. Snow asserts many of the same points that were argued above. He asserts that Dr. Lott determined his competency to stand trial at least six months prior to the trial date and that Snow's condition deteriorated substantially between that assessment and the trial date. Snow also argues that Dr. Lott did not have the benefit of the 1987 and 1990 special education records, nor had he any contact with Snow's family or teachers.

¶15. The State argues that Snow's competency is res adjudicata and is without merit. Snow raised the issue of competency on direct appeal and this Court found that the trial court clearly considered: the findings of Dr. Lott and Dr. Goff; Snow's behavior and appearance in the courtroom; and conversations on the record in which Snow demonstrated a clear understanding of his rights and need of legal counsel, and made a finding on the record that Snow was competent to stand trial. *Snow v. State*, 800 So.2d at 488-91.

¶16. We agree with the State. This Court found Snow's counsel made every effort to have Snow evaluated on the issue of mental retardation and insanity by the defense's experts. The

6

State succeeded in having its own experts examine Snow, as well. The trial court found Snow competent to stand trial, and this Court upheld that decision saying: "The trial court conducted a competency hearing and determined that Snow was competent to stand trial. That finding was based on evidentiary support and is not clearly erroneous."*Id.* at 491. This issue is procedurally barred.

**VI.    Validity of waiver of rights/ineffective assistance of counsel.**

¶17.    Shortly after his arrest, Snow made several incriminating statements to law enforcement officers. The record indicates that after Snow was apprehended, he was placed in the backseat of a law enforcement car. Officer Tim Woods positioned himself next to Snow on the backseat of the car in order to guard him.. Woods testified that Snow asked "[w]hat are they going to do to me for this?" At that time, Woods interrupted Snow and informed him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), asking if he understood his rights. Snow answered that he did. Woods then remarked that it was a "stupid thing for him to do", i.e., shooting the deputies, and Snow responded, "it sure was."

¶18.    In the hearing to suppress these statements, Snow's attorney effectively attacked the voluntariness of Snow's statements, the question of whether he understood his right to remain silent and have a lawyer present and whether Woods questioned or coerced Snow into making such statements. The trial court denied Snow's motion to suppress. When Snow moved to have Kitchens removed as counsel, he was replaced by Michael Adelman. Adelman did not ask the circuit court to reconsider the ruling on the motion to suppress.

7

¶19. Snow now argues that he did not knowingly, intelligently and voluntarily waive his right to remain silent or for assistance of counsel before making these statements. He argues that his attorney was ineffective for not asking the court to reconsider the motion to suppress and for failing to develop an argument and present evidence concerning the lack of a valid waiver. He argues that evidence of his mental retardation should have been presented where Standard 7.5.9 of the American Bar Association Standards for Criminal Justice recognizes that a person's mental retardation can affect and impair each element of an otherwise valid waiver.

¶20. Snow's argument fails for many of the same reasons that the above arguments have failed. At the time of Snow's trial, there was only evidence that he was a slow learner and had been in special education classes. There was evidence of his borderline performance on the certain psychological tests and testimony of his mother and aunt that he grew up poor and without a father. In the hearing to suppress the statements, Snow's attorney diligently cross-examined the police officer who was in Snow's presence when he made the incriminating statements, asking whether the officer believed that Snow understood his rights and questioning him as to Snow's demeanor and response to being read his *Miranda* rights. The officer consistently testified that Snow was calm and coherent and responded in a way that led him to believe that Snow understood his rights. We find that this issue is without merit.

### VII. Jury instructions / ineffective assistance of counsel.

¶21. Snow argues that the trial court erred when, at the conclusion of the sentencing phase, the court included as to each alleged victim the aggravating circumstance that "the defendant

created a great risk of death to many persons." This stems from the fact that Snow shot the deputy who was driving the car, causing the deputy to slam the break pedal forcefully enough to cause the hood of the car to thrust downward. There were other vehicles in close proximity to the patrol car when the shooting occurred and when Snow dove back into the still moving car and fired repeatedly. Snow argues that the omission of the word "knowingly" in the court's statement of the aggravated circumstance was erroneous and that he is entitled to a new sentencing proceeding.

¶22. In *McGilberry v. State*, 843 So.2d 21 (Miss. 2003), the Court stated:

> McGilberry argues that the jury instruction concerning the aggravating circumstance as to whether the defendant created a great risk of death to many persons was deficient in that it failed to require the jury to find that he "knowingly" created such a risk to persons other than his intended victims. This issue was capable of determination at trial and on direct appeal and is now procedurally barred from collateral review. *Miss.Code Ann*. § 99-39-21(1).

*McGilberry* 843 So.2d at 29.

¶23. We find that the omission of the word "knowingly" from the jury instructions is not sufficient to order resentencing. Snow secured a gun and hid it from view, waiting until the law enforcement officer had radioed that they were leaving Simpson County. He then shot the deputy who was, at the time, driving at approximately 55 miles per hour on a well-traveled highway. Snow then jumped back into the car and randomly fired the gun in the interior of the car where three people were likely to be shot and injured. These facts indicate that Snow knowingly created the risk. Furthermore, the offense for which Snow was charged was sufficient for a death penalty sentence even without the "creating a great risk to many people" aggravating circumstance.

9

### VII. Cumulative error

¶24. Because Snow's non-*Atkins* assignments of error are without merit, there is no cumulative effect of errors.

## CONCLUSION

¶25. We grant Snow leave to seek post-conviction relief in the trial court on the issue of mental retardation in accordance with *Atkins* and our holding in *Chase*. We deny Snow's application in all other aspects.

¶26. **LEAVE TO SEEK POST-CONVICTION RELIEF GRANTED IN PART AND DENIED IN PART.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. DIAZ AND RANDOLPH , JJ., NOT PARTICIPATING.**