KING, Justice,
for the Court:
¶ 1. A jury in DeSoto County found Jeremy Rogers guilty of statutory rape, sexual battery, and fondling of his twelve-year-old stepdaughter, Mary.[1] Aggrieved, Rogers has filed this appeal. Finding no violation of Rogers’s constitutional rights, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
¶ 2. On September 8, 2009, Mary was living with her mother, Margaret, and Rogers. Margaret, a nurse, left for work at approximately 6:30 p.m., leaving Mary at home with Rogers. Margaret, concerned for another daughter, who was enrolled in college in Oxford, left work early, at approximately 7:30 p.m., and returned home. When Margaret arrived home, she found Rogers and Mary in her bedroom, both naked.
¶ 3. On the way to school the next morning, Margaret confronted Mary about what had occurred the previous day between her and Rogers. Mary admitted to her mother that they had had sexual relations. Immediately, Margaret contacted the police, and both she and Mary gave statements. Mary was taken the Rape Crisis Center, and Nina Sublette, a nurse practitioner, performed a sexual-assault exam and documented the following injuries: excoriation to the labia minor, acute laceration at her posterior fourchette and an area of cervical ectropion.
¶ 4. Rogers was charged with statutory rape, sexual battery, and fondling. On September 20, 2010, the matter proceeded to trial. Margaret testified to the events of September 8, 2009, including that she had returned home from work find to Rogers and Mary in her bedroom, both naked, and that once she had confronted Mary about the situation, Mary had admitted that she had sex with Rogers. Mary testified that, on September 8, 2009, she had *295 had sex with Rogers. According to Mary, on numerous prior occasions, Rogers had touched her in a sexual nature, including engaging her in oral sex. Sublette corroborated Mary’s testimony of a sexual encounter and stated that Mary’s injuries were “caused by blunt, penetrating trauma from a sexual assault.”
¶ 5. The jury convicted Rogers of all three counts. Rogers was sentenced to serve thirty years for the statutory-rape conviction and thirty years for the sexual-battery conviction, -with the sentences to run concurrently. For the fondling conviction, he was sentenced to serve fifteen years with two years to serve and thirteen years suspended, with the sentence to run consecutively to the other two sentences.
DISCUSSION
¶ 6. Rogers raises the following issues on appeal: (1) whether Rogers was denied his fundamental right to a fair trial by the introduction of extensive prior-bad-acts evidence, and (2) whether Rogers received ineffective assistance of counsel.
¶ 7. Rogers argues that he was denied his right to a fair trial because during cross-examination of Margaret, his attorney elicited a lengthy story which portrayed Rogers as a “hot-tempered reckless drunk driver, a racist, and a violent wife-beater.” Rogers argues the following statements were inadmissible:
What was your and Jeremy’s relationship back on 9-8-09?
We were husband and wife.
What was your relationship like?
I was completely in love with him, and I thought he was completely in love with me. He was the first person I wanted to go to when I thought my daughter was in danger because [Rogers] protected us always. Jeremy never let anything happen to any of us.
Had you and him had any marital problems prior to 9-8-09?
We had normal marital problems that everyone has.
Was there three incidents in particular where you had left and didn’t come home that irritated Jeremy in the past?
There was one incident, yes, sir.
What happened on that incident?
[Attorney for the State objected to relevance; the objection was overruled.]
So what occasion is that that you left?
I can’t recall the date. I can recall the incident. We had been out—
Let me ask you this before you get into it. Could you give us a time frame?
How close was it to 9-8-09?
It wasn’t close, but it was during the time that we lived at W.E. Ross Parkway, but it was not close.
Tell me what happened.
¶ 8. Margaret then testified about a night in which she and Rogers had been drinking in Tunica. On their way home, Margaret rode on the back of Rogers’s motorcycle, and he was “really, really, really, really way to[o] drunk to even be driving.” She testified that Rogers wanted to go to Waffle House, and as they pulled into the parking lot, “he thought it would be funny to whiz by [people in the parking lot] and act like he was going to hit them.” Margaret stated she was “scared to death” because “when [Rogers] gets to drinking that much, it can not end well sometimes.”
¶ 9. According to Margaret, once inside the restaurant, she sent Rogers to apologize to the people in the parking lot. While he was outside, a teenager sitting near her gave her a cigarette. When Rogers returned, he addressed the teenager, “Well if you’re going to give my wife a cigarette, how about giving me the whole [expletive] pack?” Margaret testified that *296 Rogers then told the teenagers that they talked “like niggers, and then proceeded to try and educate them on how to be white.” According to Margaret, soon after Rogers’s outburst, they decided to leave, and while in the parking lot, Rogers began screaming at her and calling her a “nigger lover.”
¶ 10. At this point in her testimony, Rogers’s attorney stated: “My question was: When were you gone for a period of time. Are you getting to that part of it?” Margaret responded by stating, “Yes, sir, but I have to tell you the circumstances around that.”
¶ 11. Margaret continued to testify and stated that Rogers then drove them to their home, and once they had arrived home, Rogers had “started to become more and more violent.” Margaret testified that Rogers had begun beating her with her a lawn chair. Margaret testified that eventually he had stopped and she had sneaked out of the house.
¶ 12. Rogers acknowledges that the evidence at issue was introduced without objection and elicited by Rogers’s trial counsel. This Court consistently has held that a defendant cannot complain of evidence introduced as a result of cross-examination by the defense counsel.
¶ 13. In Fleming v. State, 604 So.2d 280, 289 (Miss.1992), the Court stated:
It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial. See Singleton v. State, 518 So.2d 653, 655 (Miss.1988); Davis v. State, 530 So.2d 694, 699 (Miss.1988); Brown v. State, 534 So.2d 1019, 1024 (Miss.1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989); Lewis v. State, 445 So.2d 1387, 1389 (Miss.1984); Simpson v. State, 366 So.2d 1085, 1086 (Miss.[1979]), cert. denied, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979); Sanders v. State, 219 So.2d 913 (Miss.[1969]), cert. denied, 396 U.S. 913, 90 S.Ct. 228, 24 L.Ed.2d 188 (1969); see also Shannon v. State, 321 So.2d 1, 2 (Miss.1975) (no error where objectionable statements “were to a great extent the product of the cross and direct examinations by the defense attorney”). As the Court stated pithily in Reddix v. State, 381 So.2d 999, 1009 (Miss.[1980]), cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980): “If the defendant goes fishing in the state’s waters, he must take such fish as he catches.”
¶ 14. Because the statements at issue were elicited by Rogers’s defense counsel, this issue is without merit. Rogers argues that his trial counsel’s elicitation of the evidence, failure to limit the prejudicial statements from Margaret, and failure to request a limiting instruction regarding Margaret’s statements deprived him of his right to effective assistance of counsel.
¶ 15. This Court has determined that, in order to prevail on a claim of ineffective assistance of counsel, a defendant must prove (1) that his attorney’s overall performance was deficient and (2) that the deficient performance, if any, was so substantial as to prejudice the defendant and deprive him of a fair trial. Smiley v. State, 815 So.2d 1140, 1146 (¶25) (Miss.2002) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). There is a presumption that counsel’s conduct falls within the wide range of reasonable professional assistance, and in order to overcome this presumption, the defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Id. (citing Schmitt v. State, 560 So.2d 148, 154 (Miss. *297 1990)). “Only where it is reasonably probable that, but for the attorney’s errors, the outcome of the trial would have been different will this Court find the counsel’s performance was deficient.” Id.
¶ 16. No evidence supports the argument that Rogers’s trial counsel’s performance was deficient in any manner. This Court previously has determined that “Counsel’s choice of whether to ask certain questions or make certain objections falls within the realm of trial strategy and does not generally amount to ineffective assistance of counsel. Such choices are presumed strategic “unless counsel’s tactics are shown to be ‘so ill chosen that it permeates the entire trial with obvious unfairness.’ ” McGilberry v. State, 843 So.2d 21, 31 (¶26) (Miss.2003) (citations omitted). The record indicates a strong likelihood that Rogers would have been convicted even without Margaret’s statements elicited during cross-examination. During trial, Mary testified in detail regarding the sexual abuse, and both Margaret and Sublette corroborated her testimony. The overwhelming evidence of Rogers’s guilt forestalls the possibility of finding that mistakes by his trial counsel affected the final outcome at trial. Richmond v. State, 751 So.2d 1038, 1049 (¶ 31) (Miss.1999). A fundamental reason why no prejudice can be demonstrated in this case is that it is clear from the record that Rogers is guilty. Id.
¶ 17. Rogers failed to prove that his attorney’s overall performance was deficient and that the deficiency was so substantial as to prejudice him and deprive him of a fair trial. Accordingly, this issue is without merit.
CONCLUSION
¶ 18. Based on the discussion, the judgment and sentences of the DeSoto County Circuit Court are affirmed.
¶ 19. COUNT I: CONVICTION OF STATUTORY RAPE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF FONDLING AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO (2) YEARS TO SERVE AND THIRTEEN (13) YEARS POST-RELEASE SUPERVISION WITH FIVE (5) YEARS REPORTING, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY TO THE SENTENCE IN COUNT I. SENTENCE IN COUNT III SHALL RUN CONSECUTIVELY TO THE SENTENCES IN COUNTS I AND II. APPELLANT SHALL PAY A FINE OF $1,000, COURT COSTS, $1,000 TO THE MISSISSIPPI CHILD VICTIM’S TRUST FUND AND $865 RESTITUTION TO THE MISSISSIPPI CRIME VICTIMS COMPENSATION FUND, WITH CONDITIONS. APPELLANT IS GIVEN CREDIT FOR 102 DAYS TIME SERVED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ„ CONCUR.

. The Court uses the name "Mary” to refer to the victim in an effort to protect her privacy; the name is also consistent with the briefs presented to the Court.