# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-01216-SCT

*ALONDO GREENLEAF*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/29/2017 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| TRIAL COURT ATTORNEYS: | ROSHARWIN LEMOYNE WILLIAMS |
| | WILLIAM HARVEY GRESHAM, JR. |
| | ALLAN D. SHACKELFORD |
| | RICHARD B. LEWIS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/21/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     Alondo Greenleaf was convicted of aggravated assault after stabbing a young man in the back.  Greenleaf testified it was an accident, and on appeal he contends he received constitutionally ineffective assistance of counsel because his defense attorney did not offer what Greenleaf calls an "accident instruction" based on the excusable homicide statute.  But

Greenleaf fails to rebut the presumption this was sound trial strategy, so we affirm Greenleaf's conviction and sentence.

**FACTS**

¶2.     On April 29, 2016, Greenleaf asked his cousin,[1] Cecily Matthews, to borrow her truck. Matthews initially agreed, but her younger brother, Dennis Smith, Jr., had recently borrowed it and still had the keys. When Greenleaf asked Smith for the keys, Smith refused because, he said, he had recently overheard Greenleaf arguing with his wife, and Greenleaf had threatened to "run her over." At the time of the incident, Smith was about sixteen years old, and Greenleaf was twenty-seven. Smith lived at Matthews's house, and Greenleaf sometimes stayed there too. Several other people were present—Matthews's friend, Smith's friend (an eighteen-year-old man), and Matthews's eight-year-old son. Greenleaf and Smith began arguing outside, but eventually everyone ended up indoors. At that point the stories diverge.

¶3.     Matthews said she saw Greenleaf holding a knife with the blade down as if it were a dagger, "like he was ready to stab somebody." A short time later, Greenleaf "bear hugged" Smith and stuck him in the lower back with the knife. Greenleaf then told Smith's friend he was next and "chased him down the street."

¶4.     Smith testified that Greenleaf went into the house first. Shortly after Smith himself went in, Greenleaf approached him suddenly and they "bear hugged." Smith said he never saw the knife. After Smith was stabbed, Greenleaf threatened Smith's friend and chased him out of the house.

---

[1] Greenleaf called Matthews his cousin, but Matthews's brother, Smith, expressed doubts they were actually related.

¶5.    Greenleaf took the stand in his own defense and testified that the stabbing was an accident. After the argument with Smith, Greenleaf walked away and went indoors to feed his dog—Greenleaf explained that he had been staying with Matthews and he was keeping his dog at her house. Greenleaf got a kitchen knife to open a bag of dog food when Smith and his friend approached Greenleaf and shoved him. Greenleaf was surprised and lost his balance; the "bear hug" resulted from his trying to catch himself by grabbing Smith. Greenleaf said he dropped the knife during the scuffle and did not know where it went. He realized he had inadvertently stuck Smith only after Matthews began yelling at him. Greenleaf offered to stay and help or to drive Smith to the hospital, but Smith declined. Smith and his friend then threatened to "shoot up" Greenleaf's grandmother's house, so Greenleaf left to avoid escalating the situation. Greenleaf said he later received a phone call from a police investigator and turned himself in.

¶6.    On cross-examination, Greenleaf admitted that he had spoken with the police after the incident and that he had not mentioned the dog or opening a bag of dog food. Then, in rebuttal, the prosecution called the police officer who had interviewed Greenleaf. The officer added that, in Greenleaf's original account of the incident, Greenleaf had admitted he had the knife before going into Matthews's house.

¶7.    The jury found Greenleaf guilty of aggravated assault, and he was sentenced to five years in prison, with three years suspended and three years of nonreporting post-release supervision. Greenleaf now appeals.

**DISCUSSION**

3

¶8. Greenleaf contends he received constitutionally ineffective assistance of counsel because his attorney did not request a certain jury instruction.

¶9. A defendant in a criminal case has a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). But "[t]here is a strong presumption that counsel's performance falls within the range of reasonable professional assistance." *Id.* at 689. To succeed on a claim of ineffective assistance of counsel, the defendant must prove (1) that his attorney's performance was deficient and (2) that the deficient performance deprived the defendant of a fair trial. *Dartez v. State*, 177 So. 3d 422, 423 (Miss. 2015). "The benchmark for judging any claim of ineffectiveness of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Branch v. State*, 961 So. 2d 659, 666 (Miss. 2007) (quoting *Strickland*, 466 U.S. at 686).

¶10. Ineffective-assistance claims are usually more appropriately brought in post-conviction proceedings. *Dartez*, 117 So. 3d at 422-23. "It is unusual for this [c]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal," because "there is usually insufficient evidence within the record to evaluate the claim." *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003) (alteration in original) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (Miss. Ct. App. 2002)). We address ineffective-assistance claims on direct appeal only when "the record affirmatively shows ineffectiveness of constitutional dimensions, or . . . the parties stipulate that the record is adequate and the

4

Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed." **Read v. State**, 430 So. 2d 832, 841 (Miss. 1983).

¶11. And we recognize a strong presumption that "[c]ounsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy" and generally cannot give rise to an ineffective assistance of counsel claim. *See* **Givens v. State**, 967 So. 2d 1, 6 (Miss. 2007) (quoting **Cole v. State**, 666 So. 2d 767, 777 (Miss. 1995)). The same is true of jury instructions, and "[w]hether to request a certain instruction generally is a matter of trial strategy." **McCoy v. State**, 147 So. 3d 333, 347 (Miss. 2014). This Court has repeatedly observed that "trial counsel's decision to not request a jury instruction falls under the category of trial tactics, which are not subject to review." **Sea v. State**, 49 So. 3d 614, 619 (Miss. 2010) (quoting **Neal v. State**, 15 So. 3d 388, 406 (Miss. 2009)). "Such choices are presumed strategic unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." **Rogers v. State**, 85 So. 3d 293, 297 (Miss. 2012) (internal quotation marks omitted) (quoting **McGilberry v. State**, 843 So. 2d 21, 31 (Miss. 2003)).

¶12. Greenleaf calls the particular instruction he contends his defense attorney should have submitted an "accident instruction," but the instruction he proffers on appeal is actually based on the excusable homicide statute, Mississippi Code Section 97-3-17 (Rev. 2014). It provides:

> The killing of any human being by the act, procurement, or omission of another shall be excusable:

(a) When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;

(b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;

(c) When committed upon any sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.

Although the statute defines excusable homicide, the Court of Appeals has suggested the same circumstances would also serve to make an assault excusable. *See Rogers v. State*, 994 So. 2d 792, 802 (Miss. Ct. App. 2008); *McTiller v. State*, 113 So. 3d 1284, 1291 (Miss. Ct. App. 2013) (three-judge plurality); *Towles v. State*, 193 So. 3d 688, 697-98 (Miss. Ct. App. 2016) (suggesting an excuse instruction based on the excusable homicide statute would be appropriate in an assault case, but finding no plain error in failing to instruct on all three subsections). But even if we were to assume the trial court was required to instruct on excuse had an instruction been offered, we cannot call the decision not to submit such an instruction to be questionable trial strategy in this case, much less "so ill chosen that it permeates the entire trial with obvious unfairness." *Rogers*, 85 So. 3d at 297.

¶13. Greenleaf was prosecuted under Mississippi Code Section 97-3-7(4)(a)(ii) (Rev. 2014), which provides in relevant part that one is guilty of aggravated assault if he "purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Thus, aggravated assault, as charged here, required the injury to have been caused "purposely or knowingly." *Id.* "Purposely or knowingly" has substantially the same meaning as "wilfully," which itself "means

6

intentionally and not by accident." *See* ***State v. Hawkins***, 145 So. 3d 636, 641 (Miss. 2014);

***Ousley v. State***, 154 Miss. 451, 455, 122 So. 731, 732 (1929). Greenleaf's defense at trial

was that the stabbing was unintentional, and his defense attorney argued Greenleaf was

innocent because the stabbing had been an accident.[2]

¶14.    But for the stabbing to have been excusable under the instruction Greenleaf proffers

on appeal, there are additional requirements: under (a), an accident would have been

excusable, but only if it had occurred while Greenleaf did some "lawful act by lawful means,

with usual and ordinary caution"; (b) requires that it be done by accident and "in the heat of

passion, upon any sudden and sufficient provocation"; and (c) is not based on accident at all,

but would have required that the stabbing occurred in "sudden combat . . . and without any

dangerous weapon being used." *See* Miss. Code Ann. § 97-3-17. We can hardly fault

Greenleaf's trial attorney for not requesting an instruction that might confuse the jury by

suggesting it was required to find these additional elements in order to acquit Greenleaf

based on his accident defense. Greenleaf has failed to rebut the presumption that counsel's

failure to offer the proffered instruction was trial strategy.

¶15.    The record is sufficient for this Court to find that Greenleaf's ineffective assistance

of counsel claim is without merit.

¶16.    **AFFIRMED.**

---

[2] Greenleaf does not raise the issue of whether his attorney should have offered a true accident instruction, but we observe that if he had offered such an instruction, it would not have been error for the trial court to refuse it. *See* ***Powell v. State***, 806 So. 2d 1069, 1079-80 (Miss. 2001).

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**